May it please the court, I represent Mason Murphy. This is a case here on a motion to dismiss granted by the district court. It is a civil rights case. My client was peacefully walking on a rural road. He was on the wrong side of the road. We acknowledge that. There's a Missouri statute, 300-405, says you have to walk against traffic. He was walking with traffic. And Officer Schmitt rolled up on him and said, give me your name. And my client said, no. A quite elaborate argument ensued, went on for nine minutes, finally my client was placed under arrest, and he sues now for retaliation for exercise of his First Amendment rights. The first three elements of that are well established. The first element is a protected action by the plaintiff, in this case exercising his speech to say I won't say my name. Adverse action, that's an easy one, the arrest. Three is a little more complicated, motivation, retaliatory animus, a but-for test, but I'm sure we'll get into that in more detail later. And the last element really is where this case lives and breathes. That is the requirement, normally, most cases, that there was no probable cause for the arrest. So here we go to Atwater, which says that if an officer has any reason to arrest a subject, in other words, the subject has broken some law, that the subject can be arrested and there's no retaliation. Now we come to the Neves case, which was decided in 2019. These events occurred in 2021 afterward. One of the things about some of the cases are that there's a lot of crazy, raucous behavior and the Neves case is certainly a good example of that. We are at the Arctic Man Festival in Alaska, and there are lots of people, crazy and drunk, and an officer comes up to one group and says, hey, your keg of beer is accessible to juveniles, you have to remove that. And then Mr. Neves approaches and says, hey, don't listen to those cops, they're a bunch of schmucks and things like that. And then the critical thing that happens is that they scuffle a little bit. And Mr. Neves is arrested, he sues and says, oh, retaliation, because I challenged the police. And the court said, no, there's probable cause, because you scuffled with the officer. It's a resisting arrest or assault, whatever you want to call it. This is actually an easy case. Now we come to the heart of this case, which is the court writes an exception. And the exception is, the example they give is jaywalking. So if there's a person protesting the police while jaywalking, and the officer arrests the person for jaywalking, then it's, even though there's probable cause, because jaywalking is against the law, it is mostly, I think the word is typical, that the officer exercises discretion not to arrest that person, any person, for that offense. And therefore, the retaliation claim goes forward. I suggest to this court, this is the heart of my argument, that my case, Mr. Murphy's matter, is directly within that exception. And the reason is that my client, what he did wrong was he walked on the wrong side of the road, which I suggest in this case, it was dark, it was late, it was rural. He didn't probably pay any attention to which side he was on. And I think the officer didn't really know the law either. I don't know if you've watched the video, but it's quite startling. Counsel, let me ask you this. Sure. The government asserts that the Neve's exception is dicta. What's your response to that? Well, I discussed that in my brief, Your Honor. And the Eighth Circuit has written that, and other circuits as well, that this court has to follow dicta of the Supreme Court. If it, I mean, it doesn't absolutely have to, I guess, but if it doesn't, there are going to be inconsistent results around the circuits. So that's really my response to that. I mean, let's imagine that the. Sir, are you saying it's dicta or it's not dicta? Oh, it's dicta. There's no question it's dicta, sir. I agree with that. But let's imagine that the justices are back in conference thinking about the case. And to me, what they're worried about is the Mason Murphy scenario. That's their concern. I mean, I wish they'd said walking on the wrong side of the road instead of jaywalking, but they said jaywalking. Let me ask for a little clarification. Are you saying that the jaywalking exception is dicta or that the exception to the no probable cause rule is dicta? I think that it's both dicta, Your Honor. I would agree with that. Because the case itself, there was probable cause. And the court conferred, I mean, I hope I'm not disagreeing with Judge Malloy, but I think that this whole section of the opinion in Neeves on the jaywalking says, okay, we're clarifying this. There has to be probable cause. But there's going to be cases. There are going to be cases. Let me quote from Justice Gorsuch. He did a concurrence in Neeves. He said, nothing in our precedent, let alone logic, suggests that causation is always unprovable just because the officer had probable cause to arrest. So they were really thinking it through in this case. And they wanted to make sure that situations like jaywalking, like walking on the wrong side of the road, would still be coming forth to have justice for subjects whose constitutional rights were violated. Counsel, would you address the issue of whether or not this was a lawful order, more specifically? Sure. And because I think it relates to the district court's opinion basically found that there was a violation of Missouri statutes here. Yeah. So I think that goes to the Heibel case. And I will confess to you, I'm living on exceptions here. I've got two exceptions. I've got the Neeves exception and now the Heibel exception. So let me just read you from Heibel. Petitioner's concerns are met by the requirement, and Heibel 2004 or something, that's approximately right, are met by the requirement that a Terry stop. And this is a Terry stop under an objective standard. He was on the wrong side of the road. Reasonable suspicion. A Terry stop must be justified and reasonably related in scope to the circumstances which justified the initial stop. That's longstanding clear law. Under these principles, an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop. Now, let me detail that a little bit. In the Heibel case, we're down in Nevada. There's a phone call for an assault with a description of a car. The officer sees a guy standing next to a car that meets the description of the car. He goes over, he says, hey, who are you? I'm not telling you. So it goes on from there, the argument, the arrest. And the critical fact is that in that case, the officer didn't know who had committed the assault. They were looking for the perp. So identification of the person standing next to the matching car. I mean, he wasn't the guy, but that's not important. The critical thing is that the officer needed to ID the perp. In this case, Mr. Murphy was ID'd, not his identity, but the person who had committed it was clear because he was standing right in front of him when it happened. So that's the difference. Now, there's other issues about what is called other evasive behavior. So there's a big question issue with refusing to identify yourself. Ah, you didn't identify yourself, but you didn't have any duty to identify yourself. I think under the high bill exception, there is no duty to identify himself because it's in the case, the exception is when, and there's no statute in Missouri requiring you to do it, which was present in Nevada. Well, doesn't lawful order arguably, in other words, if the officer orders you to identify yourself, doesn't that arguably fall within the statute? Assuming, let's say, we had a question of identity. In other words, if there was a report that someone had just robbed a liquor store, drive up, walk behind him. He's walking on the wrong side of the road. You go up and ask to identify. Does the statute work in that context? I'm sorry, under which statute? Under high bills. I'm talking about 300.080. In other words, lawful order. Okay. All right. I didn't know whether you were that or on the wrong side of the road. Because under high bills, you need a state statute, right? And then you need reason to be related to the investigatory stop, is my understanding. Okay. So I have a different understanding of the statute at issue in high bill. In high bill, they said in Nevada, there is a statute that says a subject in a Terry stop must identify himself. There is no such statute in Missouri. There's a critical distinction, I think. Further, in this case, if it's a lawful order, it has to be consistent with high bill. And I'm suggesting that under the high bill exception, it's not a lawful order. So you don't have to, a subject doesn't have to follow an unlawful order. Only a lawful order. There's also this whole issue of the Wesby case where, that's a Supreme Court case from 2018. The officers come up to this wild party. There's a, the place is a mess. And there's nudity, drug use. They get somebody on the phone who claims to be the landlord and admits she isn't. And they said, oh, that's enough evasive behavior. That's enough. But I am suggesting to this court, my client didn't stumble. The officer admitted that there was no resisting. He admitted he wasn't, quote, on something. And if you watch the video, the guy's stone cold sober. And that's what we allege. And the video's part of the complaint because it's referenced. So my assertion is that the evasive behavior simply doesn't get, in this case, under that case law to where it needs to be for Officer Schmidt to arrest Mr. Schmidt. Not Mr. Murphy, sorry. What about the clearly established problem? Okay. Is that, is there enough ambiguity and high ball and these other cases to say that it wasn't clearly established that he could ask for his identification assuming it was only a Terry stop? Yes, sir. And that's why I read you directly from high ball. I mean, high ball says, under these principles, an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances. I mean, that's pretty strong. Who makes the decision as to what's reasonably related? Sure. And what, you know, we talk a lot about in qualified immunity, it can't be at a generalized level, it has to be some specificity. How do we make that determination or who makes that determination what's reasonably related? Well, I think it's, I view qualified immunity as sort of a large cloud of complexity. But I think that you have to look at where the case falls on the continuum. In other words, is it way at one end or way at the other? In this case, this idea that the officer had the subject, Mr. Murphy, right in front of him, tells him that identification of who did it is not part of his investigation. He knows who did it. It's the human being right in front of him. Mr. Schock, your rebuttal time has started. If you'd like to resume. I see that. I'll stop. Thank you so much. Mr. Jordan. May it please the court. I'm Wayne Jordan here on behalf of Appellee Officer Michael Schmidt, requesting this court uphold the district court's granting his motion to dismiss Appellant's retaliatory arrest claim. The heart of the matter today is that Appellant fails to plead that Officer Schmidt violated any clearly established right as required by the case law to overcome the qualified immunity protections. As we just heard, that he does have the burden of proof today in establishing that the right that his client had, sorry, that the right that Officer Schmidt violated was clearly established. When we look at this in the case law, clearly established as directed by Westby, says that to be clearly established, a legal principle must have to be sufficiently clear foundation by then existing precedent. The rule must be settled law, which means that it is controlled by, it is directed by controlling authority and that there is some robust case law to understand this. How about the Supreme Court of the United States? Doesn't your argument require us to ignore the Neves decision? I don't believe so, Your Honor. When we look at the Neves exception, it is, as he just admitted, it is dicta. It is something that is suggested. It is a hypothetical and that it is not the controlling case. The controlling facts of the matter in Neves would actually favor Officer Schmidt. There is some low-level conduct that is occurring. There is then, after the officer then pursues that conduct, there is some, we then get into the protected right that the appellant alleges and that the court then found that no, they are arresting them based on the actual criminal conduct and that the rest of that is ancillary. When we look at the protected conduct that is carved out as what we would consider this narrow exception, the fact pattern would not even direct the circumstances here in this case. Well, is it fair to say the arrest was based on the failure to identify, not the initial stop? I mean, that seems fairly clear from the record, right? And in other words, not from him walking on the wrong side of the road. It looks like when you look at the record, the arrest was squarely based on the failure to identify here. Is that the way you view it? I mean, that's the way I think the district court viewed it. And I would not disagree with the district court in that assessment that there is at least the, I would say the primary focus here is that it's the failure to comply with a lawful order. And that does incorporate not identifying himself. But there is, when we look at the lawful order and the initial crime that is committed, and we will again admit that walking on the wrong side of the road is why the officer stopped him. It is a lower level crime, but that is what instigated the fact pattern here. When taking those together, Westby is controlling on that, your honor. And that the evasive procedures that, or the evasive tactics that Mr. Murphy used, coupled together with the initial illegal conduct, does give rise to a common law inference that some other criminal activity is going on. As appellant cites to the YouTube video, I believe that is part of the record and many have reviewed it at this point, that there is at least some suggestion that something else is going on. That other criminal activity is at least at the bare minimum. You seem to be asserting that the refusal to identify oneself creates probable cause for an arrest. Does the case law support that? Coupled with the totality of circumstances, your honor. And I would not say that simply it does give rise to just probable cause. Shepard versus Ryan Barger would dispel that. But it also is not clearly an unlawful act. And that is what appellant must show is that the conduct that officer Schmidt engaged in is clearly unlawful so that every reasonable officer would know that his actions are unlawful. And that is the standard to defeat qualified immunity protections. Counsel, what troubles me about this case is that we are at the pleading stage. This is not summary judgment. We're under a plausibility standard here. Your honor, the case law on that I would direct towards Hess. Which says that, again, they do have the burden to show that there is going to be something. It's not gonna just be merely consistent with that they have the right to a cause of action. They must at least be able to meet all of the elements. And as appellant agrees, the heart of the issue today is going to be part four for the jury that he fails to even do that. And when we look at the case law, I mean, there really is- What's he missing? What's, he is missing the fourth element for a tellatory arrest that he lacked probable cause or argued probable cause. And that- So you're asking us to ignore the Neves case then? I'm not asking to ignore the Nivens exception or the dicta in Nivens that carves out some very narrow exception. The argument here is that it still doesn't apply. He just has to plead a plausible claim. Correct, your honor. And that in the Nivens exception, it is going to be heavily fact intensive for what the court is considering. That someone is first engaging in a protected activity, such as their First Amendment rights. And then after this, subsequently, they are arrested for something low level as jaywalking. As appellant argues and that the Nivens exception applies, he really wants to misdirect the court that walking on the same side of the road is the same as jaywalking. That's not where the exception comes in. It comes into the factual scenarios and he pleads himself out of court. So going back to that issue, what specific facts here lead to probable cause? The specific facts here that lead to probable cause first, and this is from his petition and the brief. That while on duty, Officer Schmidt observed Murphy walking on the wrong side of the road at night or partial darkness, and then- But setting that aside, I think you conceded earlier, the arrest is basically based on the interaction that happens after the initial encounter. The failure to identify, and I think you said that the totality of circumstances would lead an officer to suspect something else was going on. So what specifically, in addition to the failure to identify, would lead a reasonable officer to be suspicious here to the level of probable cause? If I'm understanding you correctly, Your Honor, then it is the facts that get towards the, that give rise to even having the failure to identify or giving that lawful arrest, we do concede they are the same. Start with the entire reason why he stopped him, why he pulled him over. He didn't just pull him over because he thought that he was exercising some protected right, and because he is not pulling him over for exercising a protected right, that is the heart of why the NIMA's exception cannot apply here. It is fact intensive, and so the only reason that he gives him this, he even gives him the lawful order, which again, to get out of that, we are having to do mental gymnastics to try and figure out, is this an unlawful order? That's the heart of the matter today, Your Honor. He did not clearly give him an unlawful order. He did not clearly just come after Mr. Murphy for exercising some protected right as suggested in Nivens. He didn't know who he was. He saw someone violating the law, again, low level, but violating, like committing a crime. And he just started to try and figure things out. And figuring those things out of what is the totality of going on here, he gives him that lawful order. And do you think we can decide that at the pleading stage, given the inferences that we have to make? I do, Your Honor, in that even with the inferences that would be required to be drawn in the appellant's favor, the limited, narrow, minuscule exceptions that he even cites to you do not factually lead us towards pushing into the exceptions. And what is still clear at the pleading stage, when assessing whether or not qualified immunity should be established, what the court would have to decide here is that every officer across, and every reasonable officer would have to know of this very limited exception, when it would apply, how it should be used, and that it would direct their police conduct, which is just not the case. We're only citing to one case here, Your Honor. There is not the robust consensus of the case law. It's my understanding that both the Third and the Sixth Circuits have said it's not dicta. Are you asking us to disagree with them? As far as... The Neeves exception. And the Neeves exception, I would... This circuit has never held that it has been anything other than dicta. Well, we've never held anything. That is correct, Your Honor. And that, I believe, is exactly what is going into the argument here, is that even if it is not just simply dicta, it is not so well-known that every officer would know about this. Well, the Supreme Court of the United States is... I mean, we have to follow what they say. And if we follow what they say on the controlling facts of the case that Nivens actually applied to, it would direct that the court would still have to uphold that the qualified immunity protections here, in this case, were accepted. Again, not just getting away from dicta. Dicta is, let's say, column A of the issue here. In column B, the facts still do not line up with what the Supreme Court is considering in Nivens. And when we start looking towards what is actually in this case, he never gets to the point where he can plead that the qualified immunity protections should not apply. Even at the pleading stage, Your Honor. And with that, if there are no further questions, I will briefly conclude that when we look at the case today, because the does-not-say-to-claim-upon-relief-can-be-granted, even from the pleading stage, drawing all reasonable inferences, there is no basis to overcome the qualified immunity protections, and we respectfully ask this court to uphold the motion to dismiss. Thank you, Your Honors. Mr. Schock, you've got almost four minutes left. Oh, I'm sorry. Minute 40. I just have three quick things to say. The first is, I really don't see anything else going on. I mean, the officer is in endless discussions with his fellow officers, and he makes a phone call from the Sally Port. Hey, it's not clear who he's talking to. What can I charge him with? It's absurd. He calls my client horrible names. I'm not going to say the words. I'm sure you've read them. I think it would degrade the court. But there was nothing. No stumbling. Was he on something? No. And so they're talking about this in the tape. The next thing is addressing this concern that there's no case interpreting the Heibel exception. I suggest to this court that the Heibel exception is completely clear. If the failure, an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related. So that's it. That's what we have. He said the gentleman's right in front of him. It's so obvious. There's a whole obvious case line in QI. I guess I was educated here during my opponent's argument that the third and sixth say it's not dicta. I didn't see those cases. But I will tell you that it kind of looks like dicta to me. But if you don't think it's dicta, I'm all for it. But it doesn't matter because this court follows the Supreme Court. And as I say, you can imagine them up there thinking about the implications of this very matter, which would lead to arbitrary and erratic arrests and conviction as is described in the city mission case. I'm out of time if there are more questions. Thank you so much for your attention. Mr. Jordan and Mr. Schock, we appreciate your arguments and the cases submitted.